<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NICOLE F.,<br><br>                    Plaintiff,<br><br>              v.<br><br>MARTIN O'MALLEY,<br>Commissioner of the Social Security<br>Administration,<br><br>                    Defendant. | Case No. 2:23-cv-04690 (BRM)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Plaintiff Nicole F.'s ("Plaintiff") appeal of the final decision of the Commissioner of the Social Security Administration ("Commissioner"[1]) denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381–83, and for Disability Insurance Benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 402–34. (ECF Nos. 1, 7.) The Commissioner filed an opposition. (ECF No. 9.) As of the date of this Opinion, Plaintiff has not filed a reply. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). Having reviewed the submissions filed in connection with this appeal and having declined to hold oral argument in accordance with Local Civil Rule

---

[1] Martin O'Malley became Commissioner of the Social Security Administration ("SSA") on December 20, 2023. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Mr. O'Malley is substituted as Defendant (previously, Kilolo Kijakazi) in this suit. *See also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

78.1(b), for the reasons set forth below and for good cause shown, the Commissioner's decision is

**AFFIRMED**.

### I.    BACKGROUND

#### A.    Procedural History

This case arises out of Plaintiff's challenge to the Commissioner's denial of her application for SSI and DIB. (*See* ECF No. 1.) On January 7, 2019, Plaintiff applied for SSI and DIB, alleging disability beginning February 2, 2018, due to epilepsy, anxiety, a learning disability, and depression. (*See* ECF No. 3 (Transcript of Proceedings[2] ("Tr.")) at 114.) The SSA initially denied Plaintiff's claim on May 29, 2019, and upon reconsideration on September 12, 2019. (Tr. 82–169.)

Plaintiff then filed, through counsel, a written request for a hearing (*id.* at 175–76), and on August 1, 2022, Administrative Law Judge Peter R. Lee ("ALJ Lee") held a hearing regarding Plaintiff's claim (*id.* at 36–81). In a decision dated October 3, 2022, ALJ Lee found Plaintiff not disabled within the meaning of the Act because she could perform work that exists in significant numbers in the national economy. (*Id.* at 14–35.) ALJ Lee's decision became the final decision of the Commissioner after the Appeals Council denied Plaintiff's request for review on July 5, 2023. (*Id.* at 1–6). Having exhausted her administrative remedies, Plaintiff filed her appeal with this Court, seeking review of ALJ Lee's decision.

#### B.    Factual Background

At the time of ALJ Lee's decision dated October 3, 2022, Plaintiff was a thirty-five-year-old female with a high school education who had not engaged in gainful employment since February of 2018. (*Id.* at 40, 299.) Plaintiff had most recently been employed full-time as a shift

---

[2] The administrative record is set forth in this transcript. (*See generally* ECF No. 4.)

manager for a staffing agency; she had also been employed full-time in 2011 in an office role for a nonpartisan campaign canvassing company. (*Id.* at 40–41.) Plaintiff stated she left her role at the staffing agency in 2018 because her employer could not provide a reasonable accommodation for her seizures. (*Id.* at 46.) In November 2018, Plaintiff underwent a vocational rehabilitation evaluation (the "November 2018 Evaluation"). (*Id.* at 371.) The November 2018 Evaluation classified Plaintiff as having "medium" strength, meaning she could lift up to fifty pounds, and determined she could frequently climb, balance, kneel, crouch, reach, crawl, handle, and finger. (*Id.* at 376.) Additionally, Plaintiff could occasionally stoop and constantly feel, hear, talk, and taste/smell, and she scored highly on categories related to vision. (*Id.*) The evaluator concluded Plaintiff could perform "a host of jobs" based on her capacities at that time. (*Id.* at 386.)

Plaintiff filed for SSI and DIB in January 2019, claiming the following conditions: epilepsy, anxiety, learning disability, and depression.[3] (*Id.* at 114.) In her request for reconsideration, Plaintiff amended her application to include injuries she received when she was struck by a car while walking on March 28, 2019 (the "2019 Accident"). (*Id.* at 115).

### 1.  Plaintiff's Mental Health History

Plaintiff was evaluated by psychological consultative examiner Steven Yalkowsky, Ph.D., on behalf of the state Division of Disability Services in March 2019.[4] (*Id.* at 447.) Mr. Yalkowsky diagnosed Plaintiff with major depressive and post-traumatic stress disorders and assessed her mental health difficulties as of moderate impact. (*Id.* at 449.) At that time, Plaintiff was

---

[3] The administrative record indicates Plaintiff had applied for SSI and/or DIB on several prior occasions but was denied. (Tr. at 115–16.) None of these prior applications are the subject of the appeal before this Court.

[4] The Court notes Plaintiff's psychological evaluation took place shortly before the 2019 Accident. (*Id.* (evaluation dated March 27, 2019)).

participating in outpatient treatment three days a week for mental health difficulties and taking psychotropic medication. (*Id.*) Mr. Yalkowsky described Plaintiff as having "age appropriate social skills," appropriate emotional responses, appropriate attire and grooming, and "logical, coherent and goal directed" thought processes. (*Id.* at 448.)

### 2. Plaintiff's Neurological History

Plaintiff reported experiencing her first seizure in 2007. (*Id.* at 296.) In November 2018, Plaintiff was examined by Dr. De Silva and requested seizure medication, which she had stopped taking for approximately four weeks because of problems with her medical insurance. (*Id.* at 416, 495.) When Plaintiff completed a seizure questionnaire in January 2019, she reported having between one and four seizures per month in the prior six months. (*Id.*) Plaintiff's most recent consultation in the record with a neurologist, Dr. Michael L. Sananman, is from June 2020, during which Dr. Sananman noted Plaintiff "still has occasional shaking during sleep with mild urine moisturing [symptoms possibly connected to nocturnal seizures]," despite an increased dosage of anti-seizure medications in the preceding months. (*Id.* at 797–800.) However, in progress notes relating to Plaintiff's treatment for injuries following the 2019 Accident from July 12, 2021, Dr. Wael Elkholy noted Plaintiff reported her last seizure was "over 1 year ago." (*Id.* at 729–30.)

At the August 1, 2022, hearing, Plaintiff testified she experienced one to two seizures per month. (*Id.* at 44, 61–63.) Upon examination by ALJ Lee during the hearing, Plaintiff explained she experienced petit seizures during the day, manifesting as "auras" in her field of vision, and she believed she experienced seizures in her sleep based on signs she observed upon waking (overnight urination and lacerations on the inside of her cheeks and tongue). (*Id.* at 61–62.) Once Plaintiff experienced a seizure, she typically needed fifteen to twenty minutes to recover. (*Id.* at 45.) Plaintiff also testified she had never gone a full year without experiencing a seizure. (*Id.* at 63.)

### 3.   The 2019 Accident and Plaintiff's Subsequent Pain Issues

Immediately following the 2019 Accident, Plaintiff sought emergency room treatment. (*Id.* at 451–65.) Diagnostic studies determined Plaintiff suffered no fractures from the impact of the car (*id.* at 456), but she had tenderness in her "right arm and elbow, bilateral knees, and back pain" (*id.* at 459). Plaintiff was discharged with a prescription for pain medication and a referral to an orthopedist; her discharge papers listed no work limitations. (*Id.* at 460.) On April 3, 2019, Plaintiff underwent MRI imaging, which identified disc herniation and compression in both the cervical and lumbar spines, tears of the lateral meniscus and effusion in both knees, and tendinosis and hypertrophy of the acromioclavicular joint in the right shoulder. (*Id.* at 489–94.)

In May 2019, Plaintiff received an orthopedic evaluation from Dr. Rashel Potashnik, a consultative examiner for the SSA (the "Potashnik Evaluation"). (*Id.* at 495.) Dr. Potashnik reported that Plaintiff exhibited a normal gait and entered the evaluation without an assistive device, though she declined to squat or walk on her heels or tiptoes. (*Id.*) Plaintiff reported tenderness on palpation of the cervical, thoracic, and lumbar spine and experienced low back pain when she performed a supine straight leg raise, though she barely ranged her neck and back. (*Id.*) While Plaintiff did not show effort on a strength test of the upper extremities, Dr. Potashnik observed her strength was "good" and she had no swelling or deformities in the upper extremities. (*Id.*) Plaintiff barely ranged her right shoulder but had normal range of motion in her right elbow. (*Id.*) The examination of Plaintiff's lower extremities showed no swelling, deformities, or effusion; while both knees were tender and showed some diminished range of motion, both knees exhibited "good strength." (*Id.*) Dr. Potashnik concluded Plaintiff's knee exam supported a meniscal injury. (*Id.*) The Potashnik Evaluation did not opine on how these results might translate to vocational

capacity. (*Id.*) Plaintiff's subsequent treatment included physical therapy, pain medication, and chiropractic treatment. (*Id.* at 546–58, 565–69, 571–92.)

After receiving clearance from neurologist Dr. Sananman, Plaintiff began receiving epidural steroid injections for pain management in July 2019. (*Id.* at 343–44, 607–26.) In October 2019, Plaintiff underwent a lumbar discectomy by Dr. Elkholy to decompress her spinal cord. (*Id.* at 639–40.) At a follow-up appointment in November 2019, Plaintiff stated that "her low back pain [had] improved significantly," and her back pain was controlled but continued to report neck pain. (*Id.* at 773.) In December 2019, Plaintiff reported eighty percent improvement in radiating pain but that her low back pain had returned. (*Id.* at 768.) To address the continued low back pain, Plaintiff received nerve blocks, first in December 2019 and again in February 2020. (*Id.* at 753–65, 770.) In May 2020, Plaintiff underwent an endoscopic rhizotomy to address her back pain further (*id.* at 745), as well as a lumbar spinal fusion in early 2021 and a transverse process fusion in March 2021 (*id.* at 51, 632, 733). Plaintiff also underwent arthroscopies on her right knee in November 2019 and on her left knee in July 2020, complemented by physical therapy. (*Id.* at 630–32.) At the most recent examination in the record, dated July 12, 2021, Dr. Elkholy noted Plaintiff "experienced 90% radicular pain relief [but] still complains of pain in her low back that is bothersome at the morning and night . . . . The pain is rated 4-5/10 in intensity. The pain interferes with daily activities and sleep." (*Id.* at 729.)

### 4. Administrative Hearing and ALJ Lee's Determination

During the administrative hearing before ALJ Lee on August 1, 2022, Plaintiff testified about her conditions. Plaintiff testified she continues to experience low back, neck, and knee pain that limits her ability to stand for more than fifteen minutes or walk more than one block without stopping, and her doctors had few, if any, remaining treatment options for her pain. (*Id.* at 51–54.)

Plaintiff also stated she believed repetitive movements of the head, shoulders, and hands would cause significant pain. (*Id.* at 54–57.) Plaintiff currently resides with her parents, and she primarily spends time listening to music and watching television. (*Id.* at 59.) While Plaintiff testified she was unable to help with household chores such as cooking, food shopping, and cleaning, she was capable of taking care of her personal hygiene. (*Id.* at 59–60.) Plaintiff also stated she did not have a driver's license but used public transportation to get to medical appointments, and she visited her aunt approximately once a week, often getting a ride from family members. (*Id.*)

ALJ Lee found Plaintiff is not disabled under the meaning of the Act. (*Id.* at 18.) ALJ Lee determined Plaintiff has not been engaged in substantial gainful activity since February 2, 2018, and found Plaintiff has the following severe impairments: "degenerative disc disease with Radiculopathy, Right Shoulder Tendinosis, Meniscus Tear (Knees, bilateral), Epilepsy, Depressive Disorder, Post-Traumatic Stress Disorder and Substance Abuse." (*Id.* at 19.) However, he found Plaintiff's impairments, both individually or in combination, do not meet or equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

ALJ Lee went on to assess Plaintiff's residual functional capacity ("RFC") and determined she is capable of performing sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) with several exceptions.[5] (*Id.* at 23.) In making this determination, ALJ Lee relied primarily on Plaintiff's testimony at the administrative hearing (*id.* at 36–78), as well as the Plaintiff's Function

---

[5] ALJ Lee listed the following restrictions on Plaintiff's ability to perform sedentary work: "she can never climb ropes, ladders or scaffolds. She can never be exposed to unprotected heights or hazardous machinery. She can occasionally climb stairs and ramps. She can never crawl. She can occasionally kneel and occasionally stoop and crouch. She can perform occasional reaching overhead and frequent reaching in all other directions. She can perform frequent fingering and handling. She can occasionally push and pull. She can frequently balance. She can never have exposure to extremes in cold, vibration, or concentrated pulmonary irritants. She can have occasional contact with supervisors, co-workers and the public. She is able to do only simple and routine tasks." (*Id.* at 23.)

Report to the SSA dated January 8, 2019 (the "Function Report") (*id.* at 313–20) and medical reports and evaluations in the administrative record. In the Function Report, Plaintiff stated she regularly walked her dog, completed household chores and laundry, shopped for food and personal products, socialized and "hung out" with friends daily, and was able to go out in public alone. (*Id.* at 313–17.) While ALJ Lee confirmed Plaintiff "suffers from physical and psychological impairment with some resulting limitations in functioning," he determined Plaintiff's impairments do not support a finding of total disability. (*Id.* at 25.)

ALJ Lee evaluated the evidence Plaintiff presented regarding her physical limitations stemming from the 2019 Accident. Specifically, ALJ Lee found Plaintiff's performance on the orthopedic consultative examination in the Potashnik Evaluation "demonstrated some limitation but not to the extent of disability," noting that, while she reported tenderness on palpation of her spine and knees and low back pain during a supine leg raise, she ambulated with a normal gait, had moderate range of motion in both knees, and had no deformity or swelling of the upper or lower extremities. (*Id.* at 25.) ALJ Lee also pointed to notes from Plaintiff's medical examinations between August 2020 and February 2021, which indicated gradual improvement in her musculoskeletal pain following her surgical procedures and physical therapy. (*Id.* at 25–26.) Based on this evidence, as well as Plaintiff's own statements in the Function Report regarding her daily activities, ALJ Lee found "there is no reasonable medical basis for the extent of [physical] limitations alleged." (*Id.* at 27.) ALJ Lee considered the Potashnik Evaluation and found it partially persuasive regarding Plaintiff's limitations but noted it "failed to provide a functional assessment regarding [Plaintiff's] vocational abilities" connected to those physical limitations. (*Id.*)

ALJ Lee also determined Plaintiff's epilepsy and mental health difficulties, while presenting impairments, do not preclude her from performing sedentary work with the enumerated

limitations. Regarding Plaintiff's epilepsy diagnosis, ALJ Lee found the notes from Plaintiff's neurologist indicated "her seizures are under fairly good control with medications," even if she periodically has "auras" or seizures during sleep. (*Id.* at 26.) ALJ Lee also noted Plaintiff's testimony about the frequency of her seizures—that she had never gone a year without one—was inconsistent with the progress notes of Dr. Elkholy from July 2021, remarking that Plaintiff's last seizure was more than a year prior. (*Id.* at 26, 729–30.) Regarding Plaintiff's mental health, ALJ Lee acknowledged Plaintiff's history of mental health treatment and current use of psychotropic medications but "in reviewing [medical exhibits in the record,] did not see mental status examinations suggesting she had difficulty with understanding, memory or concentration," or that she experienced suicidal ideation, psychosis, or other behavioral or mental impacts. (*Id.* at 26.) ALJ Lee determined the limitations associated with these impairments did not provide a "reasonable medical basis for the extent of the limitations alleged." (*Id.* at 27.) Nonetheless, ALJ Lee diverged from the SSA's consultative examination upon reconsideration of Plaintiff's claims in September 2019, which found Plaintiff had an RFC for light work, because he found "the evidence indicates that the claimant is more limited than a light residual functional capacity." (*Id.* at 27, 122–23.)

Consistent with the five-step sequential evaluation process for SSI and DIB benefits (described below), ALJ Lee found that, while Plaintiff could not perform past relevant work, she could perform jobs existing in significant numbers in the national economy. (*Id.* at 28–30.) Accordingly, ALJ Lee determined Plaintiff is not disabled under meaning of the Act. (*Id.* at 30.)

## II.    STANDARD OF REVIEW

On a review of a final decision of the Commissioner, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or

reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive by a reviewing court if supported by "substantial evidence" in the record. 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). A district court must affirm an ALJ's decision if it is supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985) (citations omitted). Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545 (3d Cir. 2003). The Supreme Court reaffirmed this understanding of the substantial evidence standard in *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). To determine whether an ALJ's decision is supported by substantial evidence, a court must review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). "Courts are not permitted to re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Accordingly, a court may not set an ALJ's "decision aside if it is supported by substantial evidence, even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

### III.  THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

Under the Act, the SSA is authorized to pay SSI and DIB to "disabled" persons. 42 U.S.C. § 1382(a). A person is "disabled" if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person is unable to engage in substantial gainful activity,

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated under the Act establish a five-step process for determining whether a claimant is disabled for purposes of SSI and DIB. 20 C.F.R. § 404.1520.[6] First, the ALJ determines whether the claimant has shown he or she is not currently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), (b); *see Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *Id.* Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); *see Bowen*, 482 U.S. at 140–41. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). These activities include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and

---

[6] Regulations for DIB and SSI are virtually identical. For the purposes of this appeal, further citations will only be made to the DIB regulations regarding disability evaluation, 20 C.F.R. § 404.1501, *et seq.* The parallel SSI benefits regulations are found under 20 C.F.R. § 416.901, *et seq.*

(6) Dealing with changes in a routine work setting.

*Id.* A claimant who does not have a severe impairment is not considered disabled. 20 C.F.R. § 404.1520(c); *see Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

Third, if a claimant's impairment(s) is found to be severe, the ALJ then determines whether the impairment(s) meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates his or her impairment(s) is equal in severity to, or meets, one of the impairments on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See* 20 C.F.R. § 404.1520(d); *see also Bowen*, 482 U.S. at 141. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526. If there is more than one impairment, then the ALJ must consider whether the combination of impairments is equal to any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the residual functional capacity ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(e), (f); *Bowen*, 482 U.S. at 141. Step four involves three sub-steps:

> (1) the ALJ must make specific findings of fact as to the claimant's [RFC]; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the [RFC] to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000) (citations omitted). When determining RFC, an ALJ's consideration of medical opinion evidence is subject to the framework articulated at 20 C.F.R. § 404.1527 (for claims filed before March 27, 2017) or 20 C.F.R. § 404.1520c (for claims filed after March 27, 2017).

Claimants are not disabled if their RFC allows them to perform their past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). However, if the claimant's RFC prevents him or her from doing so, or if the claimant has no past relevant work, an ALJ proceeds to the fifth and final step of the process. 20 C.F.R. § 404.1520(a)(4)(g). The final step requires the ALJ to "show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428; 20 C.F.R. § 404.1520(a)(4)(v). In doing so, "[t]he ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled." *Plummer*, 186 F.3d at 428; 20 C.F.R. § 404.1523. Notably, an ALJ typically seeks the assistance of a vocational expert at this final step. *Plummer*, 186 F.3d at 428.

The claimant bears the burden of proof for steps one, two, and four. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). Neither side bears the burden of proof for step three "[b]ecause step three involves a conclusive presumption based on the listings[.]" *Id.* at 263 n.2; *see Bowen*, 482 U.S. at 146 n.5. An ALJ bears the burden of proof for step five. *Sykes*, 228 F.3d at 263.

On appeal, the harmless error doctrine[7] requires a plaintiff to show, as to the first four steps:

---

[7] Harmless error review, which requires the appellant to demonstrate harm, applies to administrative appeals. *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016). The Supreme Court explained its operation in a similar procedural context in *Shinseki v. Sanders*, 556 U.S. 396, 407–11 (2009), which concerned review of a governmental agency determination. The Supreme Court stated: "the burden of showing that an error is harmful normally falls upon the

(1) an error occurred; and (2) but for that error, they might have proven their disability. *Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016). In other words, when reviewing an appeal based on the first four steps, a court considers whether the plaintiff articulated a basis for a decision in their favor, based on the existing record. If the plaintiff cannot, it is unlikely they will meet their burden of showing an error was harmful. *See, e.g.*, *Lippincott v. Comm'r of Soc. Sec.*, 982 F. Supp. 2d 358, 380–81 (D.N.J. 2013) (finding ALJ's error was harmless); *Powers v. Comm'r of Soc. Sec.*, Civ. A. No. 19-21970, 2021 WL 1207793, at *7 (D.N.J. Mar. 31, 2021) (finding the plaintiff had not demonstrated she was prejudiced by the ALJ's decision and had not shown an error occurred amounting to harm).

The court's review of legal issues within this appeal is plenary. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). Factual findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes*, 228 F.3d at 262. Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). Substantial evidence also "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation and internal quotation marks omitted). When substantial evidence exists to support the Commissioner's factual findings, this Court must abide by those determinations. *See id.* (citing *Schaudeck*, 181 F.3d at 431); 42 U.S.C. § 405(g).

## IV. DECISION

Plaintiff appeals ALJ Lee's decision and requests the Court either reverse the decision and find Plaintiff is entitled to a period of disability beginning on February 2, 2018, or, in the

---

party attacking the agency's determination." *Id.* at 409. In such a case, "the claimant has the 'burden' of showing that an error was harmful[.]" *Id.* at 410.

alternative, vacate the decision and remand for a new hearing. (ECF No. 1.) Plaintiff makes both

a substantive argument, that ALJ Lee's decision is not based on substantial evidence because it

does not sufficiently connect the RFC determination to the evidentiary record in step four of the

evaluation process, and a due process argument, that ALJ Lee did not act as a neutral magistrate

and made his determination with bias. (ECF No. 7 at 7–39.) In response, the Commissioner argues

ALJ Lee's decision is supported by substantial evidence because he "assessed Plaintiff's RFC after

considering all of the relevant evidence and discussed the rationale for the assessment." (ECF No.

9 at 14.) The Commissioner also contends an ALJ is presumed to be unbiased, and Plaintiff has

not provided sufficient evidence to rebut that presumption. (*See id.* at 17.) The Commissioner

therefore requests the Court affirm ALJ Lee's decision.

The Court first addresses Plaintiff's challenge to ALJ Lee's determination under step four

and then addresses Plaintiff's argument that ALJ Lee acted with bias in finding Plaintiff is not

disabled under the Act.

### A.  Plaintiff's Challenge to ALJ Lee's Step Four RFC Determination

Plaintiff's overarching argument is that ALJ Lee erred in the RFC determination because

he failed to connect facts in the evidentiary record to the capabilities required to perform sedentary

work with the enumerated restrictions. Plaintiff attacks ALJ Lee's decision for failing to list the

specific requirements of the "sedentary work" category under the SSA regulations and to conduct

a function-by-function analysis of Plaintiff's capacity to meet each requirement, including to lift

up to ten pounds; to stand for up to two hours and sit for up to six hours a day; and the ability to

perform repetitive finger and hand motions.[8] (ECF No. 7 at 16–24.) Plaintiff also argues ALJ Lee

---

[8] To the extent Plaintiff takes issue with the decision because it recites the conclusion of ALJ Lee's analysis at the start of the relevant section rather than at its end (*see* Tr. at 23), this argument is unavailing. Under Third Circuit law, an ALJ need not "use particular language or adhere to a

placed improper weight on Plaintiff's ability to perform activities of daily life. (*Id.* at 25–28.) Instead, Plaintiff points to the Potashnik Evaluation as evidence that Plaintiff's persistent pain requires more severe restrictions on her capacity to perform work-related functions. (*Id.* at 20–23.) Accordingly, Plaintiff requests the Court either reverse the decision or remand for a new hearing.

Conversely, the Commissioner responds the RFC adjudged by ALJ Lee is consistent with the record evidence and accompanied by a rationale based in it. The Commissioner argues ALJ Lee's analysis accounts for the trajectory of Plaintiff's treatment following the 2019 Accident and Plaintiff's "90% pain improvement by July 2021." (ECF No. 9 at 15.) The Commissioner also contends ALJ Lee's RFC explicitly accounts for Plaintiff's limitations related to her seizures and to her mental health difficulties. (*Id.* at 15–17.) The Commissioner asserts these facts constitute substantial evidence to support the decision, and ALJ Lee's determination should be affirmed.

### i. Function-by-Function Analysis

At step four in the disability determination process, an ALJ must determine the claimant's RFC and compare it to her past relevant work. 20 C.F.R. §§ 404.1520(e), (f); *Bowen*, 482 U.S. at 141. The claimant bears the burden of proof on step four, *see Sykes*, 228 F.3d at 263, including to present the facts necessary for the ALJ to assess the claimant's RFC, *Bowen*, 482 U.S. at 146 n.5 ("The claimant . . . must bear the burden . . . of showing . . . *at step four that the impairment prevents him from performing his past work*." (emphasis added)).

Although an ALJ is required to "consider all evidence before him" and "give some

---

particular format in conducting his analysis," as long as "there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505 (affirming ALJ's decision supported by substantial evidence where, "read as a whole," decision "illustrates that the ALJ considered the appropriate factors in reaching the conclusion"). In other words, the substance of the analysis is what matters, even where, as here, the decision's structure leaves something to be desired. Because ALJ Lee's decision permits meaningful review, *see id.*, the placement of its ultimate determination has no import.

indication of the evidence which he rejects and his reason(s) for discounting such evidence" *Burnett*, 220 F.3d at 121, the indication of the ALJ's reasoning may be "implicit" in the decision. *See Smith v. Astrue*, 961 F. Supp. 2d 620, 652 (D. Del. 2013) ("Plaintiff is correct that the ALJ failed to explicitly assess the credibility of Mrs. Smith's testimony or assign her testimony a particular amount of weight. However, a fair reading of the ALJ's decision suggests that the ALJ did implicitly make these judgments."); *Diciano v. Comm'r of Soc. Sec.*, Civ. A. No. 18-17383, 2019 WL 6696523, at *5 (D.N.J. Dec. 9, 2019) (finding that, although the RFC did not specifically mention the "functions of sitting, standing, walking, lifting, carrying, or pushing . . . that does not mean the ALJ did not 'consider' those functions. This is because implicit in the finding that Plaintiff is capable of performing work at all exertional levels is that Plaintiff has no limitations in those areas"); *Wise v. Comm'r of Soc. Sec.*, 626 F. App'x 357, 360 (3d Cir. 2015) ("We conclude . . . the ALJ's discussion of the evidence in the record that implicitly supported Dr. Rohar's criticism provided a reasonable basis for the ALJ not to include a limitation in the RFC about Wise's inability to adapt to normal work pressures or changes."). Therefore, it is sufficient for the RFC determination to be supported by "substantial evidence" in the entire record, and it is unnecessary for the ALJ to engage in an explicit "function-by-function" analysis where the reasoning for the decision is implicit in the record.[9] *Glass v. Comm'r of Soc. Sec.*, Civ. A. No. 18-15279, 2019 WL

---

[9] The Third Circuit's recent ruling in *Zaborowski v. Comm'r of Soc. Sec.*, --- F.4th ----, 2024 WL 4220691 (3d Cir. Sept. 18, 2024), aligns with this approach. There, the claimant argued 20 C.F.R. § 404.1520c, an implementing regulation of the Social Security Act that requires ALJs to explain only two of the factors they consider in evaluating medical evidence in the record (consistency and supportability), violates the Act's mandate "to state the 'reasons upon which [a denial of benefits] is based.'" *Id.* at *1 (quoting 42 U.S.C. § 405(b)(1)). Even if valid, he asserted the ALJ in his case "did not articulate how supportable and consistent the various doctors' opinions were," violating that regulation. *Id.* at *2.

In upholding the regulation, the Third Circuit stressed that "[t]he statute requires administrative judges to explain *only the dispositive reasons for their decisions*, not everything else that they considered," and ALJs need only explain other factors if consistency and supportability are not

5617508, at \*8 (D.N.J. Oct. 31, 2019) ("Contrary to Plaintiff's assertion otherwise, the . . . Third Circuit does not require an ALJ to perform a 'function-by-function' analysis at step four, so long as the ALJ's RFC determination is supported by substantial evidence in the record."); *Chiaradio v. Comm'r of Soc. Sec.*, 425 F. App'x 158, 161 (3d Cir. 2011) ("Although the ALJ did not make a task by task analysis, the overall review carefully considered Chiaradio's past relevant work and the ALJ assessed what Chiaradio could reasonably do."); *Donna R. v. Kijakazi*, Civ. A. No. 20-15449, 2022 WL 13009149, at \*12 (D.N.J. Oct. 21, 2022) ("Although the ALJ did not expressly weigh Dr. Brown's opinions at step four, the ALJ's discussion at step two demonstrates that he implicitly discounted that examiner's opinions when assessing Plaintiff's limitations in her ability to understand, remember, or apply information and to concentrate, persist, or maintain pace."); *Deranie A. v. Kijakazi*, Civ. A. No. 2:23-03157-BRM, 2024 WL 3665811, at \*8 (D.N.J. Aug. 5, 2024) ("To the extent Plaintiff alleges ALJ Kenneally did not engage in a detailed "function-by-function" assessment in his RFC analysis, such an assessment is unnecessary where, as here, there are implicit and explicit indications of the ALJ's reasoning in the record.").

Here, the Court finds substantial evidence supports ALJ Lee's step four determination because he both implicitly and explicitly considered Plaintiff's impairments and her response to treatment in assessing her RFC. ALJ Lee begins his step four analysis by noting he considered the "entire record" in the case and clearly states the RFC was based on this consideration. (Tr. at 23, 28.) ALJ Lee also states he "considered all symptoms and the extent to which these symptom[s]

---

dispositive in evaluating a medical opinion. *Id.* at \*1 (emphasis added). The Third Circuit also found the ALJ satisfied the regulation, even though he did not "reiterate the magic words "support" and "consistent" for each doctor." *Id.* at \*2. Because the ALJ provided a brief sentence explaining why a medical opinion was or was not persuasive or consistent, "[t]here was no need to say more." *Id.* In both *Zabrorowski* and the cases cited here, where claimants argued for a "function-by-function" assessment, the result is the same: an ALJ need not provide minute detail on every step he or she undertook to arrive at a determination.

can reasonably be accepted as consistent with the objective medical evidence and other evidence" and "medical opinion(s) and prior administrative medical finding(s)." (*Id.* at 23.) ALJ Lee lays out the evidence establishing Plaintiff's musculoskeletal impairments, seizure disorder, and mental health diagnoses and then explains why the medical evidence does not substantiate her "statements about the intensity, persistence, and limiting effects of her symptoms." (*Id.* at 25.) Regarding her musculoskeletal impairments, ALJ Lee describes Plaintiff's recovery progress from the 2019 Accident through references to the medical evidence in the record, including the multiple surgical procedures she underwent and the relative improvement to her condition that followed them as documented in treatment notes. (*Id.* at 25–26.) ALJ Lee also makes direct reference to medical records documenting her epilepsy treatment and compares Plaintiff's testimony about the frequency of her seizures with notes from one of her physicians that indicate she went over a year without a seizure in 2021. (*Id.* at 26.) As for Plaintiff's major depressive and post-traumatic stress disorders, ALJ Lee acknowledges "her intermittent symptoms at times cause moderate concentration deficits" but finds the mental status examinations in the record do not suggest "she had difficult with understanding, memory, or concentration," or that her "activities of daily living are compromised." (*Id.*) In addition, ALJ Lee's determination that Plaintiff can perform only sedentary work with several limitations beyond the regulatory definition of "sedentary" shows implicit consideration of the evidentiary record. *See Smith*, 961 F. Supp. 2d at 652. ALJ Lee departs from the SSA's 2019 assessment that Plaintiff could perform "light" work "because the evidence indicates that the claimant is more limited." (Tr. at 27.) ALJ Lee also says he accounts for Plaintiff's "mild to moderate limitations [related to mental distress] by limiting the claimant to work fashioned in the residual functional capacity outlined above" (*id.* at 28), which includes that Plaintiff "can have occasional contact with supervisors, co-workers and the public. She is able to

do only simple and routine tasks" (*id.* at 23).

These examples of the findings underlying ALJ Lee's RFC determination demonstrate to the Court that ALJ Lee considered the whole of the record and of Plaintiff's stated symptoms in his assessment. *See Smith*, 961 F. Supp. 2d at 652; *Diciano*, 2019 WL 6696523, at *5; *Wise*, 626 F. App'x at 360. Contrary to Plaintiff's contention, a detailed "function-by-function" assessment is unnecessary where, as here, there are implicit and explicit indications of the ALJ's reasoning in the record. *Glass*, 2019 WL 5617508, at *8; *Donna R.*, 2022 WL 13009149, at *12; *Sheppard*, 2020 WL 5652450, at *5; *Malcolm v. Comm'r of Soc. Sec.*, Civ. A. No. 16-8646, 2017 WL 5951703, at *19 n.14 (D.N.J. Nov. 30, 2017) (finding "the Third Circuit does not require strict adherence to the function-by-function analysis set forth in Social Security Ruling 96–8p").

### ii. Consideration of Daily Activities and the Potashnik Evaluation

On appeal, Plaintiff must show that (1) an error occurred; and (2) but for that error, she might have proven her disability. *See Holloman*, 639 F. App'x at 814. If Plaintiff believes an error was made, she "must clearly identify the error and explain how the error actually 'affect[ed] [his or her] "substantial rights."'" *Id.* at 814 n.3 (first alternation in original) (quoting *Shinseki*, 556 U.S. at 407). Here, Plaintiff claims ALJ Lee improperly relied upon Plaintiff's ability to take care of her personal hygiene and laundry, to use public transit, and to "hang out" with friends and family as evidence of her ability to engage in substantial gainful activity. (ECF No. 7 at 28.) Instead, Plaintiff argues ALJ Lee unjustifiably omitted evidence from the Potashnik Evaluation that substantiates the extent of Plaintiff's injuries and dismissed the resultant limitations Dr. Potashnik identified. (*See* ECF No. 7 at 20–23.) Neither of Plaintiff's arguments meet her burden of proof for step four.

First, while Plaintiff is correct that the Third Circuit limits the extent to which "sporadic or transitory activity" may serve as evidence against a finding of disability, *Smith v. Califano*, 637 F.2d 968, 971–72 (3d Cir. 1981) (finding that ALJ could not consider claimant's occasional hunting trips in RFC), an ALJ may consider "the number and type of activities in which the claimant engages," *Turby v. Barnhart*, 54 F. App'x 118, 121 n.1 (3d Cir. 2002) (finding that ALJ properly considered claimant's performance of "many of life's normal daily activities including washing dishes, grocery shopping, watching television, reading, doing crafts, visiting friends and family on occasion, and feeding her pets"). Indeed, the Third Circuit distinguishes between sporadic activities and those a claimant performs on a regular basis, viewing the latter as "appropriately indicative" of a claimant's "ability to work." *Miller v. Comm'r of Soc. Sec.*, Civ. A. No. 20-3642, 2021 WL 3137439, at *3 (3d Cir. July 26, 2021) (finding that ALJ properly considered claimant "could perform matters of personal care, do laundry, and babysit a one-year-old child"); *see also Cerrato v. Comm'r of Soc. Sec.*, 386 F. App'x 283, 286 (3d Cir. 2010) (finding that ALJ properly considered claimant's "continuous performance" of "household chores, use of public transportation, and occasional assistance at her sister's convenience store"); *Flores v. Comm'r of Soc. Sec.*, Civ. A. No. 15-6356, 2016 WL 4689948, at *14 (D.N.J. Sept. 6, 2016) (finding that ALJ properly considered claimant "can prepare simple meals, do light household chores, and shop in stores for food and personal items") (vacated on other grounds); *Seyler v. Kijakazi*, Civ. A. No. 4:21-581, 2022 WL 4483826, at *2 (M.D. Pa. Sept. 27, 2022) (finding that ALJ properly considered claimant's performance of household tasks). When courts in this Circuit have found an ALJ improperly considered a claimant's performance of activities of daily life, as in many of the cases Plaintiff cites, it is often because the ALJ used them to discount a more authoritative assessment of the claimant's vocational abilities, such as by a treating physician. *See,*

*e.g., Fargnoli v. Massanari*, 247 F.3d 34, 40 n.5 (3d Cir. 2001) ("Fargnoli's expressed desire to return to work at a light duty job cannot support a finding that he is actually capable of such work when he later testified that he cannot perform light work and *his testimony is consistent with restrictions imposed by his treating physician*.") (emphasis added); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988) (finding that ALJ improperly rejected reports of "three treating physicians [who] determined that he is disabled" based on claimant's testimony he "took care of his personal needs, performed limited household chores, and occasionally went to church"); *Rieder v. Apfel*, 115 F. Supp. 2d 496, 501–05 (M.D. Pa. 2000) (finding that ALJ improperly rejected conclusions from two physicians that claimant was disabled based in part on claimant's "non-work activities"); *Detamore v. Schweiker*, 569 F. Supp. 288, 289–90 (E.D. Pa. 1983) (finding that ALJ improperly used claimant's attendance of law school with significant accommodations to reject "[t]he unrebutted medical opinion [of her] treating physician" that claimant was disabled, supported by two other medical reports in the record).

Here, ALJ Lee reviewed Plaintiff's own assessment of her ability to perform daily activities in the Function Report and noted the following activities Plaintiff reported doing regularly:

> [S]he can perform personal care without any difficulty. She performs household chores and does her own laundry. She shops in stores. She goes out daily. She can go out alone and she is able to travel by walking, riding in a car or using public transportation. She can manage her own money when she has income. She reads, watches television and listens to music. She socialized [sic] and "hangs out" daily. She visits her family.

(Tr. at 24.) Based on this report, as well as his evaluation of the medical record regarding Plaintiff's impairments and recovery from her musculoskeletal injuries, ALJ Lee concluded "despite the complaints of allegedly disabling symptoms and daily excruciating pain, etc., her activities of daily living are not significantly impacted." (*Id.* at 27.) ALJ Lee also noted there is no finding of

disability by a physician or other vocational assessment in the record that places significant restrictions on Plaintiff's activities. (*Id.*) ALJ Lee's consideration of Plaintiff's regular, non-sporadic daily activities was therefore "appropriately indicative" of her "ability to work" and supported by substantial evidence. *Miller*, 2021 WL 3137439, at *3; *see also Smith*, 637 F.2d at 971–72; *Cerrato*, 386 F. App'x at 286.

Standing alone or as a counter to ALJ Lee's consideration of Plaintiff's daily activities, the findings in the Potashnik Evaluation do not meet Plaintiff's burden to prove an error impacting her substantial rights. *See Holloman*, 639 F. App'x at 814 n.3. As ALJ Lee noted, the Potashnik Evaluation does not "provide a functional assessment regarding [Plaintiff's] vocational abilities." (Tr. at 27.) While the Potashnik Evaluation catalogues Plaintiff's physical injuries related to the 2019 Accident and assesses her range of motion on several factors, it provides no conclusions about Plaintiff's capacity to work. (*Id.* at 495–97.) Indeed, outside of Plaintiff's hearing testimony, most of the record evidence of Plaintiff's functional capacity predates the 2019 Accident. (*Id.* at 371–86 (November 2018 Evaluation); 313–20 (Function Report from January 2019); 305–12 (Third Party Function Report from January 2019).) The one exception is the SSA's consultative examination upon reconsideration of Plaintiff's claims in September 2019, which found Plaintiff had an RFC for light work. (*Id.* at 122–23.) ALJ Lee's analysis makes clear he did consider the Potashnik Evaluation, in passages Plaintiff quotes verbatim in her own brief. (ECF No. 7 at 20, 22.) ALJ Lee weighed the Potashnik Evaluation in conjunction with all the medical evidence in the record, some of which indicated continued improvement in Plaintiff's pain.[10] Notably, ALJ Lee disagreed with the SSA's conclusion that Plaintiff is capable of light work, finding "the

---

[10] "I have also considered the findings of the consultative examiners at Exhibits B5F and B9F and find them partially persuasive. However, the doctor's [sic] failed to provide a functional assessment regarding the claimant's vocational abilities." (Tr. at 27.)

evidence indicates that the claimant is more limited than a light residual functional capacity" and required a sedentary role instead. (Tr. at 27.) Perhaps a more recent assessment of Plaintiff's vocational capacities might have substantiated Plaintiff's testimony at the administrative hearing, but "evidence that was not before the ALJ cannot be used to argue that the ALJ's decision was not supported by substantial evidence." *Matthews*, 239 F.3d at 594. Moreover, that Plaintiff disagrees with ALJ's Lee conclusion does not mean it lacks "more than a mere scintilla of evidence," which is all the law requires to uphold the determination of an ALJ. *Newell*, 347 F.3d at 545. To ask the Court to read the Potashnik Evaluation to negate the explicit findings on vocational capacity in the record would invite it unlawfully to "re-weigh the evidence or impose [its] own factual determinations." *Chandler*, 667 F.3d at 359.

### B.  Plaintiff's Contention that ALJ Lee Is Not a Neutral Magistrate

Plaintiff also attacks ALJ Lee's decision as a product of bias, arguing he is not a neutral magistrate. (ECF No. 7 at 31–39.) First, Plaintiff contends ALJ Lee's rate of denying disability applications, which ranged between 82 and 93 percent between September 2018 and March 2023, is itself evidence of "a prejudice against the very disability claimants to whom he is sworn to render neutral adjudication" and an intention to deny all claims before him. (*Id.* at 29–30, 31.) Second, Plaintiff argues ALJ Lee's bias has been recognized by other judges in this District through their adjudication of appeals from his opinions, some of which the Commissioner declined to defend.[11] (*Id.* at 31.) For these reasons, Plaintiff asks the Court to vacate and remand the decision with

---

[11] Plaintiff quotes from two oral arguments conducted by Judge Arleo addressing decisions by ALJ Lee where she expressed concern about the quality of his analysis. (*Id.* at 32–36.) Plaintiff also cites instances where the Commissioner declined to defend ALJ Lee's decisions and supported a reversal, including one before Judge Cecchi in 2023 (*id.* at 36), and other cases involving Plaintiff's counsel where counsel contends denials by ALJ Lee were egregious and caused excessive hardship to the claimants (*id.* at 38–39).

instructions for the Commissioner to assign a different administrative law judge.

The Commissioner responds that Plaintiff has not made a cognizable claim of bias. The Commissioner argues a court must presume at the outset that an ALJ is neutral, and Plaintiff needs to rebut this presumption with specific evidence of a conflict of interest or other disqualification. (ECF No. 9 at 17.) The Commissioner also asserts neither a pattern of adverse rulings against the ALJ nor statistical evidence of the ALJ's allowance rate constitute bias under the law of the Third Circuit and other courts confronted with similar data. (*Id.* at 17–19.)

An unbiased factfinder is essential to providing the full and fair hearing due process and the Social Security Act require. *See Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995) (finding that ALJ's "continuous interference" with introduction of evidence regarding claimant's conditions violated obligation to develop the record "fully and fairly"); *see also Richardson v. Perales*, 402 U.S. 389, 401–02 (1971) (holding procedural due process applies to Social Security benefits proceedings); *Valenti v. Comm'r of Soc. Sec.*, 373 F. App'x 255, 258 (3d Cir. 2010) ("A Social Security claimant has the right to a fair hearing before an impartial ALJ."). Because ALJs play an active part in developing the record in SSI and DIB cases, the Third Circuit places special importance on the impartiality of the SSA's ALJs. *See Ventura*, 55 F.3d at 902. But the Commissioner is correct that the threshold for bias is high: "the ALJ's behavior [must be] 'so extreme as to display clear inability to render a fair judgment.'" *Ball v. Comm'r of Soc. Sec.*, Civ. A. No. 18-159, 2019 WL 4722492, at *1 n.1 (W.D. Pa. Sept. 26, 2019) (quoting *Liteky v. United States*, 510 U.S. 540, 551 (1994)).

In applying this standard, the Third Circuit and district courts within it have rejected allegations of SSA ALJ bias based on "examples from other cases in which courts held [the] ALJ erred," *Valenti*, 373 F. App'x at 258, and on overall statistics about an ALJ's denial rate, *see Shanta*

*B. v. Comm'r of Soc. Sec.*, Civ. A. No. 23-4232, 2024 WL 3534338, at *7 (D.N.J. July 25, 2024). *See also James R. v. Kijakazi*, Civ. A. No. 22-05030, 2023 WL 6389097, at *5 (D.N.J. Sept. 30, 2023) ("Here, Plaintiff has not shown that the ALJ deprived him of a full and fair hearing. Plaintiff cites no evidence in the Record indicating that the ALJ was biased against him. Instead, Plaintiff chiefly relies on the ALJ's apparently high general rate of denying social security benefits and the allegation that other judges in the District have criticized the ALJ. Nevertheless, poor statistics in other cases are not sufficient for the Court to find bias."); *Ruiz v. Comm'r of Soc. Sec.*, Civ. A. No. 10-4024, 2011 WL 2745927, at *9 (D.N.J. July 12, 2011) ("Claimant attempts to create an overall appearance of bias by citing quotations from other cases in which ALJ De Steno has been involved, however she neglects to present evidence regarding his partiality in the present matter. To be granted a remand, a claimant must establish bias in her own case and not simply rely on examples from other proceedings."); *Siravo v. Comm'r of Soc. Sec.*, Civ. A. No. 15-2836, 2017 WL 1246347 (D.N.J. Apr. 4, 2017) (finding that plaintiff's contention all ALJs are biased because they grant only two to three percent of claims does not show bias in plaintiff's case). Plaintiff presents only statistics about ALJ Lee's denial rate and past instances where his decisions were remanded and/or criticized by the District, "rather than any specific instances of biased conduct or language against Plaintiff or Plaintiff's counsel." *Shanta B.*, 2024 WL 3534338, at *7. Because Plaintiff does not allege facts specific to her case to support finding ALJ Lee was biased, the Court denies Plaintiff's motion to vacate the decision and remand her claim.

**V.    CONCLUSION**

For the reasons set forth above, the Court finds Plaintiff failed to show ALJ Lee erred in determining Plaintiff was not entitled to SSI and/or DIB benefits under the Act. Therefore, the Commissioner's decision is **AFFIRMED**. An appropriate Order follows.


*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

**Dated:** September 24, 2024